# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs December 2, 2014

## WILLIE MOORE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 11-05488     James C. Beasley, Jr., Judge**

---

**No. W2014-00334-CCA-R3-PC  - Filed February 26, 2015**

---

Petitioner, Willie Moore, pleaded guilty to eleven counts of identity theft, Class D felonies, and received the agreed-upon sentence of eleven years on each count to be served concurrently with each other as a persistent offender at forty-five percent release eligibility. He filed the instant petition for post-conviction relief on the basis that his guilty pleas were not knowingly, voluntarily, and intelligently entered. The post-conviction court denied relief, and this appeal followed. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Mitchell W. Wood (on appeal) and Brent Heilig (at post-conviction hearing), Memphis, Tennessee, for the appellant, Willie Moore.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Joshua Corman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

#### A. Guilty Plea Submission Hearing

At the August 7, 2012 guilty plea submission hearing, the parties agreed that petitioner would be sentenced as a persistent offender at forty-five percent release eligibility, that all eleven-year sentences would be served concurrently, and that petitioner would seek

alternative sentencing in a separate hearing. The facts underlying the guilty plea were submitted by the State as follows:

> [Petitioner] used . . . Julian Carter's information while he obtained a Sears credit card and Discover credit card and then had the cards mailed to [petitioner's address].
>
> [Petitioner] then used the Sears credit card and the affiant's information including the name, date of birth, social security numbers to make purchases totaling over [$5,000] to different Sears stores . . . .
>
> On February 2, 2011, [petitioner] used the Discover card in affiant's . . . name . . . to make an auto purchase at Bugg's Buggys . . . [Petitioner] did buy a 2001 Ford F150 silver vehicle for $5,407.39 from Daniel Bugg.
>
> [Petitioner] was picked out of a photo lineup by Mr. Edwards as the individual posing as Julian Carter presenting a Tennessee driver's license in the name of Julian Carter but with the photo of [petitioner] on it to purchase a Ford truck.

Following this recitation of the facts, the trial court reminded trial counsel that petitioner could not receive probation on an eleven-year sentence. Trial counsel responded, "I guess I'm asking for Community Corrections then."

During the plea colloquy, the trial court asked petitioner if he signed the plea agreement and if trial counsel reviewed the terms with him, to which petitioner responded affirmatively. When asked, petitioner stated that he was pleading guilty to identity theft and forgery and was being sentenced to eleven years at thirty-five percent.[1] He said that he understood "part" of the plea agreement and acknowledged that he understood his rights with respect to a trial. Petitioner offered, "[T]he only reason I pleaded was for community correction, give me another chance at life . . . ."

### C. Sentencing Hearing

At the beginning of the sentencing hearing, the trial court and petitioner engaged in the following exchange:

---

[1] As discussed herein, petitioner's recitation during the plea colloquy that he was pleading guilty to forgery was incorrect. In addition, he also stated that his release eligibility was thirty-five percent when it was, in fact, forty-five percent.

Court: Just for the purpose of being clear, do you understand . . . you've already plead[ed] guilty to the counts as charged in this matter?

Petitioner: Yes.

Court: You did that of your own free will and accord?

Petitioner: Yes.

Court: And nobody forced or made you do it?

Petitioner: No.

The hearing then continued, after which the trial court denied an alternative sentence.

## C. Post-Conviction Evidentiary Hearing

Trial counsel testified first and stated that he had practiced law for almost twenty years in the district public defender's office. He was appointed to represent petitioner shortly after the August 2011 indictment for eleven counts of identity theft. Trial counsel said that between petitioner's indictment and his August 2012 guilty plea, he met with petitioner "on each and every report date he had" and "at least a couple of times in the jail." During each meeting, trial counsel spent twenty to thirty minutes with petitioner.

When petitioner's case was in general sessions court, another assistant district public defender sought and obtained a mental health evaluation of petitioner, which assessed petitioner as competent. Trial counsel further stated that petitioner could communicate clearly with him and understood what transpired.

Trial counsel confirmed that in meeting with petitioner, he discussed petitioner's criminal history, which included eleven prior felony convictions, and the range of punishment that would apply to him. With regard to the State's plea offer, trial counsel opined:

I feel confident that given the nature of the charge, given the fact of this court's feeling on identity theft, given the fact of the damages suffered by the victim, given the fact that he was a serving officer in the military, in a war zone, while this happened, and given the fact that it happened again, that it had previously happened, and given the fact of the brazenness of going to probate court and having his name changed to the victim's, I think given all those

facts, my client probably, if he had gone to trial and been convicted of all these counts, would have never gotten out of jail.

As a result of plea negotiations, trial counsel secured for petitioner an offer of eleven years on each count to be served concurrently, and petitioner would be permitted to apply to the trial court for admittance into the community corrections program.

Before petitioner entered into the plea agreement, trial counsel reviewed the paperwork with him and confirmed that it was petitioner's desire to enter the guilty pleas. However, approximately one week to ten days later, petitioner contacted trial counsel and told him that "he did not enter that plea under his own free will and that [trial counsel] had tricked him or coerced him." Trial counsel filed a motion to withdraw the guilty plea, and because trial counsel then had a conflict of interest with petitioner, the trial court appointed a second attorney to represent petitioner. While represented by subsequent counsel, petitioner withdrew his motion and proceeded to a sentencing hearing for resolution of the issue of alternative sentencing.

Trial counsel stated that he had no reason to believe that petitioner did not understand his range of punishment or the possible sentences at the time he entered the guilty pleas. Moreover, he had no reason to suspect that petitioner did not understand the terms of the guilty pleas.

Petitioner testified next and agreed that he was indicted for eleven counts of identity theft and that he pleaded guilty to all eleven counts. He explained that he completed the eleventh grade through the special education program and that he suffered from bipolar schizophrenia and suicidal tendencies, for which he received a shot every two weeks.

Petitioner disagreed with the number of times that trial counsel visited with him, claiming that counsel only met with him as he was going to court "on the other side of the door" and once in jail. Petitioner maintained that as far as discussing his case, trial counsel told him that he faced "a hundred and something years." He did not recall discussing the facts of the case. He stated that the original plea offer from the State was ten years, but the State increased it to eleven years because petitioner wrote the victim a letter. Petitioner said that trial counsel informed him that he would serve his sentence at forty-five percent release eligibility. However, petitioner claimed that when he signed the plea agreement, he was under the influence of medication that made him suicidal.

Upon questioning by the post-conviction court, petitioner acknowledged that he understood his actions when he pleaded guilty but that he felt that trial counsel was just "trying to speed things up" and have him plead guilty.

-4-

D.  Ruling by the Post-Conviction Court

At the conclusion of the evidentiary hearing, the post-conviction court rendered its findings:

> [W]hen the plea was entered, I took a lot of extra time discussing issues with [petitioner], and went over everything with him, and I was satisfied at the time that he understood what he was doing.
>
> That under the circumstances this was what he wanted to do.
>
> It was obvious he was wanting some extraordinary relief.
>
> And when [petitioner] quite frankly, attempted to withdraw his plea, a short time later, I appointed new counsel to take [trial counsel] out of the equation.
>
> [Subsequent counsel] spent months working with [petitioner].
>
> Eventually he decided to withdraw his petition to withdraw his plea, and wanted to go forward with the probation hearing, which we did.
>
> Had an extensive hearing and the Court determined that [petitioner] was not a proper candidate for probation or community corrections. I was satisfied at the time . . . my notes even reflect that [petitioner] has mental conditions.
>
> There's no question about that.
>
> But my recollection in reviewing the case and the file is that the extent and the complexity of the identity theft in this case gave this court a great deal of concern.
>
> But it also indicated that [petitioner] has even with his mental condition a unique ability to manipulate the system involving the identity of the victim to the extent of just - I mean, it went on and on and culminating in having his own name changed to the name of the victim while all these issues were pending.
>
> It was obvious that [petitioner] had the mental ability to work through these complexities to accomplish the identity theft that he had accomplished.

Even though the Court was aware that he had some mental conditions, the Court was satisfied that he was competent from the hearings and I'm still satisfied that he's competent.

And I'm still satisfied that he has some mental conditions that need to be addressed and I think on medication, he may have some improvements.

But there's no question in my mind that he fully understood the nature of the proceedings when he entered his guilty plea. He fully understood the potential amount of punishment he was facing. And in light of the just extensive and great injuries inflicted upon the victim by [petitioner], I think [trial counsel] rightfully advised [petitioner] that had he been convicted in a trial, the likelihood that this Court would have sentenced him to substantially more time than the eleven years that he was allowed to plead guilty to, is probably a very telling prediction by [trial counsel].

[Trial counsel] has been working in these courts twenty years and understands the nature of these offenses and understands the proof in this case which was overwhelming that [petitioner] was guilty of these offenses.

The proof was extremely overwhelming.

And I think a jury would not have had any problem convicting [petitioner] and I can assure [petitioner] that I would have not had any problem imposing a sentence that would have been higher than eleven years.

And I think all of those factors were taken into account by [petitioner] when he entered his guilty plea.

I'm convinced after I conducted the guilty plea that he understood it. He entered it freely, voluntarily, and in full knowledge of what he was looking at and full knowledge of what the allegations were, and full knowledge of what the proof would be if the case went to trial.

He accepted the guilty plea. He was upset when he did not get probation. Did not get some extraordinary relief and as a result, this petition has been filed.

I don't find that there's any basis for me to find that [trial counsel] did not do everything within his power in representing [petitioner]. That [subsequent counsel] did everything within his power in representing

[petitioner], and that [petitioner] is just simply unsatisfied with the fact that he's got to stay in jail.

Based upon these findings, the post-conviction court denied relief.

## II. Analysis

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id*. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

In his appeal of the denial of post-conviction relief, petitioner presents one issue: whether his guilty pleas were knowingly, intelligently, and voluntarily entered.[2] A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane v. State*, 316 S.W.3d 555,

---

[2] We note that petitioner does not couch this issue in terms of ineffective assistance of counsel but only as a free-standing constitutional claim. As such, the "but for provision," as it is often called, of *State v. Neal*, 810 S.W.2d 131, 139 (Tenn. 1991), which requires a post-conviction petitioner to allege and prove that "but for the omission [of a *Boykin* waiver], he would not have entered the guilty plea, is inapplicable. *See Blankenship v. State*, 858 S.W.2d 897, 901-02 (Tenn. 1993) (clarifying that the "'but for' rule is properly applied only in those cases in which the alleged invalidity of a prior guilty plea is attributable to ineffective assistance of counsel").

562 (Tenn. 2010); *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id*. Courts should consider the following factors when ascertaining the validity of a guilty plea:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Id.* (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id*. (quoting *Blankenship*, 858 S.W.2d at 904).

To ensure that defendants' guilty pleas are voluntarily, knowingly, and intelligently entered, Rule 11 of the Tennessee Rules of Criminal Procedure sets forth, in pertinent part, the requirements for guilty pleas:

> Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:

> > (A)  The nature of the charge to which the plea is offered;

> > (B)  the maximum possible penalty and any mandatory minimum penalty;

> > (C)  if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;

(D)     the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E)     the right to a jury trial;

(F)     the right to confront and cross-examine adverse witnesses;

(G)     the right to be protected from compelled self incrimination;

(H)     if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I)     if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J)     if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

Tenn. R. Crim. P. 11(b)(1).

Rule 11 also requires that the trial court ascertain that the plea is "voluntary and is not the result of force, threats, or promises," other than those contained in the plea agreement. Tenn. R. Crim. P. 11(b)(2). In addition, Rule 11 requires the trial court to inquire "whether the defendant's willingness to plead guilty results from prior discussions between the district attorney general and the defendant or the defendant's attorney." *Id.* Finally, the trial court must confirm that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3). Tennessee case law has further refined the requirements of a plea colloquy to include informing a defendant and ensuring that he understands that different or additional punishment may result from his guilty plea due to prior convictions or other factors and that the resulting conviction may be used for enhancement purposes in any subsequent criminal actions. *Lane*, 315 S.W.3d at 564 (citing *Howell*, 185 S.W.3d at 331).

In this case, the trial court made the requisite inquiries pursuant to *Lane*. 316 S.W.3d at 562. In considering petitioner's relative intelligence, the post-conviction court noted that petitioner had some mental issues but that he possessed a "unique ability to manipulate the system involving the identity of the victim" and "had the mental ability to work through these complexities to accomplish the identity theft." Although not specifically mentioned by the post-conviction court, the record reflects that petitioner had eleven prior felony convictions on his criminal record, indicating a familiarity with the criminal justice system. The post-conviction court noted trial counsel's experience and understanding of the nature of the case in which petitioner was involved. The court also credited trial counsel's testimony with regard to petitioner's knowledge of the sentencing range and other considerations, such as consecutive sentencing. Finally, the post-conviction court opined that petitioner became upset with the plea agreement when he was not granted an alternative sentence. Petitioner testified at the post-conviction hearing that he understood the consequences of the guilty pleas he entered.

However, we must also consider petitioner's understanding of his rights pursuant to Tennessee Rule of Criminal Procedure 11. "In determining whether a plea of guilty was voluntarily, understandingly, and intelligently entered, this [c]ourt, like the trial court, must consider all of the relevant circumstances that existed when the plea was entered." *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995) (citation omitted). The Sixth Circuit Court of Appeals has stated, "'[A] reviewing court may look to any relevant evidence in the record of the proceedings – including post-conviction proceedings – to determine the voluntariness of a guilty plea.'" *Id.* (quoting *Cochran v. Norvell*, 446 F.2d 61, 63 (6th Cir. 1971)). Accordingly, "whether an accused's plea of guilty was voluntarily, understandingly, and knowingly entered is to be determined based upon the totality of the circumstances." *Id.* (citations omitted).

Despite petitioner's brief statements at the guilty plea submission hearing that he understood "part" of the plea agreement and that he believed he was pleading to identity theft and forgery to be served at thirty-five percent release eligibility, the record as a whole preponderates otherwise. At the conclusion of the plea colloquy, the trial court correctly noted, "I will accept you[r] guilty plea[s] . . . to the charge[s] of identity theft, [and] it is the judgment of the court . . . that you be confined for a period of eleven years as [a] range three persistent offender in each count and that you pay the costs . . . ." After filing a motion to withdraw his guilty pleas, petitioner subsequently withdrew that motion on his own accord. He affirmed at the sentencing hearing that he understood the terms of his plea agreement, and he also testified at the post-conviction evidentiary hearing that he understood the consequences. Petitioner further confirmed that prior to entering the guilty pleas, trial counsel wrote him a letter explaining that his release eligibility would be forty-five percent. Trial counsel stated at the hearing that he had no reason to believe that petitioner did not understand his range of punishment or the possible sentences at the time he entered the guilty

-10-

pleas, and the post-conviction court credited his testimony. Indeed, no evidence was presented to support petitioner's allegation that he lacked understanding of any material component of the plea agreement. The evidence does not preponderate against the post-conviction court's findings that petitioner's guilty plea was knowingly, intelligently, and voluntarily entered.

In sum,

> [t]he evidence does not preponderate against the findings of the post-conviction court. It appears the petitioner is suffering from a classic case of 'Buyer's Remorse,' in that he is no longer satisfied with the plea for which he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.

*Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002).

## CONCLUSION

Based on the record as whole, the briefs of the parties, and the applicable legal authorities, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE